IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:23-CR-108-SRC ) |
| TRACY JENKINS | ) ) |
| Defendant. | ) ) |

**TRACY JENKINS' SENTENCING MEMORANDUM**

Tracy Jenkins survived an incredibly traumatic childhood. He experienced extensive sexual abuse and corporal punishment, and lived in the aftermath of near constant substance abuse and domestic violence at home. At almost 60 years old, he has never been afforded any kind of treatment to process the events of his past and help understand how it continues to affect him. By the time of sentencing, Mr. Jenkins will have been in custody for nearly two years. He has had the time that he's been incarcerated to reflect and truly understand how his actions have impacted the lives of his victims, as well as his own life and those of his family, and feels deep regret. He looks forward to being able to actively participate in therapy and programming at the Bureau of Prisons. He is respectfully requesting a sentence of 204-240 months.

1. **A difficult childhood:**

Tracy Jenkins' mother, Bertha Allen, had two children as a teen and was essentially forced to marry Jenkins' father, Johnny Jenkins, who was controlling and abusive. She tried to get away, but his dad hid letters from her family offering help. As soon as Ms.

1

Kent was able to, she fled from where they lived in rural Mississippi to St. Louis, where her sister lived and she had family support. Tracy was born in St. Louis soon after their arrival. He went to Mississippi to visit his father every summer, but never felt close to him or really developed a significant relationship. His father was a drinker, in & out of jail and on the streets. He was killed in a trucking accident when Tracy was 19 years old.

While she would go on to have several more marriages and relationships, Ms. Kent was mostly a struggling single mother while Tracy was growing up. The men she married generally had a few things in common: all had drinking issues, and were cruel to his mother verbally and sometimes physically. Children who witness domestic violence in the home tend to develop a host of lasting negative effects; experts have noted that the behavioral and social issues exhibited by these child witnesses are similar to those seen in victims of direct child abuse.[1] These effects include internalized behaviors such as anxiety and depression, as well as externalized behaviors like fighting, bullying and lying.[2] There is little doubt that the violent acts that Mr. Jenkins witnessed as a child imprinted heavily on his developing brain.

Tracy was subjected to extensive sexual abuse by several people, both within and outside his family while growing up.[3] It began with a family friend with he was around 9 years old, and then happened again and again. *Id*. In addition to him being a victim, his sister was molested by a cousin, and Tracy witnessed this when he was around 6 years old and she was 11. The revelation of this abuse tore his family apart. These traumatic

---

[1] Jaffe PG, Wolfe D, Wilson S, Zak L. *Similarities in behavioral and social maladjustment among child victims and witnesses to family violence*. Am J Orthopsychiatry. 1986
[2] Stiles, Melissa M. *Witnessing Domestic Violence: The Effect on Children*, Am Fam Physician 2002 Dec 1
[3] PSR pg. 20, ¶ 124

2

experiences occurred during early childhood, a time during which "the neural circuits for dealing with stress are quite malleable." [4] Early experiences can change the architecture of the brain, "shaping how readily these circuits are activated and how well they can be contained and turned off." *Id.* "Frequent or sustained activation of brain systems that respond to stress can lead to heightened vulnerability to a range of behavioral and physiological disorders over a lifetime." *Id.* These disorders include mental health issues and addiction, as well as physical health problems like cardiovascular disease, diabetes and stroke. *Id.* The elevated levels of cortisol found in children who experience prolonged periods of stress "can alter the function of a number of neural systems, suppress the immune response, and even change the architecture of regions in the brain that are essential for learning and memory." *Id.* at p. 3.

The Behavioral Science Institute in England conducted a longitudinal study to identify risk factors for sexually abusive behavior by adults who were sexually abused as children.[5] Of the group they studied, roughly 10% of the male abuse victims became abusers themselves. The study identified "particular experiences and patterns of childhood behavior" that were associated with an increased risk of victims becoming abusers later in life. These include material neglect and lack of supervision, as well as witnessing interfamilial violence. Mr. Jenkins experienced all of these things in childhood. Following the implosion of his family, the effects of these traumatic experiences started him down a path of self-medicating with alcohol.

---

[4] National Scientific Council on the Developing Child, *Excessive Stress Disrupts the Architecture of the Developing Brain*, *Working Paper 3*, January 2014, pg. 2 (Retrieved from www.developingchild.harvard.edu).
[5] Salter, D (et. al.), *Development of Sexually Abusive Behaviour in Sexually Victimised males: a longitudinal study*, The Lancet, Volume 361, Issue 9356, February 8, 2003, pgs. 471-476.

3

   **2. Struggling with alcoholism & substance abuse:**

Tracy Jenkins never got any kind of counseling or treatment to reconcile with the trauma of his childhood. Instead, he had escalating substance abuse issues that have only more recently abated. In the 80's he abused cocaine, eventually moving on to crack cocaine. [6] During the years leading up to the time encompassed by this case and throughout, Tracy Jenkins was a serious alcoholic, who explained to counsel that he regularly drank to the point of blacking out. *Id.* Increased risk of substance abuse, and alcoholism in particular, is one of the known long-term consequences of childhood sexual abuse on males.[7] This is particularly the case for male victims like Mr. Jenkins, where the sexual abuse involved intercourse. *Id.*

   **3. Relatively minor criminal history, zero point offender & risk to reoffend:**

While Tracy Jenkins does have some criminal history, none of it is recent or serious enough to count for the guidelines. This puts him in category I. While it does not apply to his case, the recent amendments to the Sentencing Guidelines included a reduction in offense level for so-called "zero-point offenders" for certain offenses due to a demonstrated decreased likelihood of recidivism. Mr. Jenkins first and only remaining felony conviction, an Unlawful Use of a Weapon charge for carrying a concealed firearm,[8] is no longer a criminal offense in the state of Missouri. His only other felony arrest, a 2002 case charging

---

[6] PSR pg. 22, ¶ 132.
[7] Dube, Anda, Whitfield, Brown, Felitti, Dong, and Giles, *Long-Term Consequences of Childhood Sexual Abuse bu Gender of Victim*, Vol. 28 Am J Prev Med 5 (2005), available at: https://www.researchgate.net/profile/David-Brown-48/publication/7847543_Long-Term_Consequences_of_Childhood_Sexual_Abuse_by_Gender_of_Victim/links/5a0796c2aca272ed279e5b27/Long-Term-Consequences-of-Childhood-Sexual-Abuse-by-Gender-of-Victim.pdf
[8] PSR pg. 16, ¶ 112.

Possession with Intent to Deliver Marijuana,[9] has been expunged from his record pursuant to the recently passed amendment to the Missouri State Constitution.

Tracy Jenkins will turn 60 years old on February 28, 2025. He will be sentenced with roughly 23 months of credit toward the time imposed by the court. Should the Court impose a sentence between 204-240 months, Mr. Jenkins would be 73-75 years old at the time of soonest release. According to Sentencing Commission reporting, older offenders are substantially less likely than younger offenders to recidivate following release.[10] According to the Commission's data, offenders like Mr. Jenkins who will be older than 60 at release and received a sentence of 120 months or more had a 5.1% rate of recidivism after release. Though the commission's data groups all geriatric prisoners as those over 60 or 65 years old, Mr. Jenkins would be considerably older than that at the time of his release. This would logically seem to reduce his likelihood of recidivism even more.

Should the Court impose the government's requested 480-month sentence, even taking into account his time served and good time, Mr. Jenkins would be 92 years old if he survived to his release. Studies have found that incarcerated persons tend to age at a rate faster than the general population, a phenomenon known as accelerated aging.[11] "Accelerated aging reflects the biopsychosocial disparities endured by incarcerated persons resulting in characteristics more closely parallel to community dwelling peers roughly ten to fifteen years older." *Id*. The sentence this Court imposes will be Tracy Jenkins' first

---

[9] PSR pg. 18, ¶ 117.
[10] Hunt & Easley, *The Effects of Aging on Recidivism Among Federal Offenders*, United States Sentencing Commission (December 2017).
[11] Rakes, Prost, & Tripodi, *Recidivism Among Older Adults: Correlates of Prison Reentry*, 15 Justice Policy Journal, Spring 2018. (internal citations omitted).

5

time going to prison; he has completed probation successfully each time it was granted to him as a much younger man.[12]

In the Bureau of Prisons, there are specially tailored Sex Offender Management Programs provided at designated institutions "to assist in the effective management of the Bureau's population of sexual offenders and to provide services that minimize this population's risk for sexual reoffense."[13] Mr. Jenkins will receive specialized assessments including risk to reoffend. *Id*. He will be released having participated in sex offender treatment throughout his lengthy sentence, a requirement of the Bureau of Prisons. *Id*. He will be released subject to any length of supervision the Court sees fit to impose, up to and including for the rest of his life.[14] The combined effect of all of these renders Mr. Jenkins one of the most closely managed and monitored kinds of prisoners and someone very unlikely to reoffend upon release.

4. **Conclusion:**

Mr. Jenkins regrets his egregious behavior, and none of this is offered as an excuse. He is deeply remorseful and ashamed of his actions, and eager to participate in treatment to address his issues. He has had significant time to reflect on the harm that caused the victims, and is profoundly sorry for the damage from his offense. He has accepted that he will receive a lengthy sentence in this case, he simply prays that the court will impose a survivable sentence that doesn't amount to death by incarceration. He respectfully suggests a sentence between 204-240 months as sufficient but not greater than necessary.

---

[12] *See generally* PSR criminal history section, pgs. 15-19, ¶¶ 111-122.
[13] US Department of Justice, *Sex Offender Programs*, Program Statement No. 5324.10, February 15, 2013
[14] PSR pg. 25, ¶ 153.

6

/s/*Melissa K. Goymerac*
MELISSA K. GOYMERAC, #83550VA
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Melissa_Goymerac@fd.org

ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2025, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the United States Attorney.

/s/*Melissa K. Goymerac*
MELISSA K. GOYMERAC
Assistant Federal Public Defender